## McCARROLL, COMMISSIONER OF REVENUES OF ARKANSAS, v. DIXIE GREYHOUND LINES, INC.

No. 138. Argued December 14, 1939.—Decided February 12, 1940.

*Messrs. Frank Pace, Jr.* and *Amos M. Mathews,* with whom *Mr. Louis Tarlowski* was on the brief, for appellant.

*Mr. A. L. Heiskell,* with whom *Messrs. Walter Chandler* and *J. H. Shepherd* were on the brief, for appellee.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

An Arkansas statute [1] prohibits entry into the State of any automobile or truck "carrying over twenty (20) gal-

---

[1] Act 67 General Assembly Arkansas, approved March 2, 1933—

"Section 1. On and after the passage of this Act it shall be a violation of the law for any person, co-partnership or company to drive

lons of gasoline in the gasoline tank of such automobile or truck or in auxiliary tanks of said trucks to be used as motor fuel in said truck or motor vehicles until the state tax thereon [six and one-half cents per gallon [2]] has been paid."

Appellee, a Delaware corporation, operates passenger busses propelled by gasoline motors, from Memphis, Tennessee across Arkansas to St. Louis, Missouri, and in reverse. The route between these points approximates 342 miles—3 in Tennessee, 78 in Arkansas, 261 in Missouri. Like busses ply between Memphis and points within and beyond Arkansas, and in reverse. It is only necessary now to consider the facts connected with operation of the Memphis-St. Louis line. They are typical.

---

or cause to be driven into the State of Arkansas any automobile or truck carrying over twenty (20) gallons of gasoline in the gasoline tank of such automobile or truck or in auxiliary tanks of said trucks to be used as motor fuel in said truck or motor vehicles until the state tax thereon has been paid.

"Section 2. Any person, co-partnership or company violating the provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in any sum not exceeding one hundred ($100) dollars. Each load carried into the state shall constitute a separate offense.

"Section 3. All laws and parts of laws in conflict herewith are hereby repealed. It is ascertained that this Act is necessary to better enforce the gasoline collection laws and said Act being necessary for the immediate preservation of the public peace, health and safety, an emergency is hereby declared to exist and this Act shall take effect and be in full force from and after its passage."

[2] Act 11 Extraordinary Sessions Arkansas, approved February 12, 1934—

"Section 22. Paragraph (c) of Section 1 of Act No. 63 of the General Assembly; approved February 25, 1931, is amended to read as follows:

" '(c) There is hereby levied a privilege or excise tax of six and one-half cents on each gallon of motor vehicle fuel as defined in this Act, sold or used in this State or purchased for sale or use in this State.' "

Each bus consumes about one gallon of gasoline for every five miles traversed. Sixty-eight gallons are required for the journey from Memphis to St. Louis—under one in Tennessee, sixteen in Arkansas, fifty-one in Missouri. The practice is to place in the bus tank at Memphis the sixty-eight gallons of gasoline commonly required for the trip; also ten more to meet any emergency. Thus upon arrival at the Arkansas line the tank contains some seventy-seven gallons of which sixteen probably will be consumed within that State. As a condition precedent to entry there, appellant—revenue officer of the State—demands that each bus pay six and one-half cents upon every gallon of this gasoline above twenty, and threatens enforcement.

By a bill in the District Court, appellee unsuccessfully sought an injunction against this threatened action. The Circuit Court of Appeals Eighth Circuit took a different view.

After accepting as correct the ruling in *Sparling* v. *Refunding Board,* 189 Ark. 189, 199; 71 S. W. 2d 182, 186, that the tax imposed was not upon property but on the privilege of using the highways, and had been definitely allocated to highway purposes, the latter court said—

"The appellant does not now contend that the tax of which it complains may not be imposed by the State of Arkansas with respect to gasoline consumed or to be consumed upon the highways of Arkansas, as compensation for the use of the highways, but it does contend that that State may not impose a tax upon gasoline which is carried in interstate commerce for use in Missouri or Tennessee, because that would constitute a direct and unreasonable burden upon interstate commerce."

"Reduced to its lowest possible terms, the question for decision, we think, is whether the imposition of the tax upon gasoline carried, for use in other states, in the fuel

tank of a motor vehicle traveling in interstate commerce can be sustained. That the tax is a direct burden on interstate commerce, cannot be controverted."

"If it is to be sustained at all with respect to gasoline to be used in other states, it must be sustained upon the theory that the method employed for determining the amount of the tax constitutes a fair measure for ascertaining the compensation which lawfully may be exacted by Arkansas from the appellant for the use which it makes of the highways of the State."

"While we can understand how the use of state highways by a carrier can be roughly measured by the amount of gasoline which that carrier uses to move its vehicles over the highways, we are unable to comprehend how the use of the highways of one state can appropriately be measured by the amount of gasoline carried in the fuel tank of an interstate carrier for use upon the highways of another state." 101 F. 2d 572, 574.

Also, it declared the point in issue is ruled by *Interstate Transit, Inc.* v. *Lindsey*, 283 U. S. 183, 186, which held invalid a tax laid by Tennessee's Legislature on the privilege of operating a bus in interstate commerce because not imposed solely as compensation for the use of highways· or to defray the expense of regulating motor traffic.

Finally, it reversed the District Court and directed entry of a decree there enjoining appellant "from enforcing the challenged tax against it [the appellee] with respect to all gasoline in the fuel tanks of its interstate busses which is being carried through Arkansas for use in other states."

This action we approve.

The often announced rule is that while generally a state may not directly burden interstate commerce by taxation she may require all who use her roads to make reasonable compensation therefor. *Hendrick* v. *Maryland*, 235 U. S.

610, 622; *Interstate Transit, Inc.* v. *Lindsey; supra,* 185, 186; *Bingaman* v. *Golden Eagle Western Lines,* 297 U. S. 626, 628.

Here, the revenue officer demanded payment of appellee on account of gasoline to be immediately transported over the roads of Arkansas for consumption beyond. If, considering all the circumstances, this imposition reasonably can be regarded as proper compensation for using the roads it is permissible. But the facts disclosed are incompatible with that view. A fair charge could have no reasonable relation to such gasoline. That could not be even roughly computed by considering only the contents of the tank. Moreover, we find no purpose to exact fair compensation only from all who make use of the highways. Twenty gallons of gasoline ordinarily will propel a bus across the State and if only that much is in the tank at the border no charge whatever is made. Evidently large use without compensation is permissible and easy to obtain.

The point here involved has been much discussed. Our opinions above referred to and others there cited define the applicable principles. The present controversy is within those approved by *Interstate Transit, Inc.* v. *Lindsey, supra.* Neither *Hicklin* v. *Coney,* 290 U. S. 169, nor *Bingaman* v. *Golden Eagle Western Lines, supra,* relied upon by appellant's counsel, properly understood, sanctions a different view.

The challenged judgment must be

*Affirmed.*

Mr. Justice Murphy took no part in the consideration or decision of this case.

Mr. Justice Stone, concurring:

The Chief Justice, Mr. Justice Roberts, Mr. Justice Reed, and I agree with Mr. Justice McReynolds, but we think a word should be said of appellant's contention

that the tax in its practical operation may be taken as a fair measure of respondent's use of the highways.

Since the subject taxed, gasoline introduced into the state in the tank of a vehicle, for use solely in propelling it in interstate commerce, is immune from state taxation except for a limited state purpose, the exaction of a reasonable charge for the use of its highways, it is not enough tnat the tax when collected is expended upon the state's highways. It must appear on the face of the statute or be demonstrable that the tax as laid is measured by or has some fair relationship to the use of the highways for which the charge is made. *Sprout* v. *City of South Bend,* 277 U. S. 163, 170; *Interstate Transit, Inc.* v. *Lindsey,* 283 U. S. 183, 186; *Bingaman* v. *Golden Eagle Western Lines,* 297 U. S. 626, 628; *Morf* v. *Bingaman,* 298 U. S. 407; *Ingels* v. *Morf,* 300 U. S. 290, 294.

While the present tax, laid on gasoline in the tank in excess of twenty gallons, admittedly has no necessary or apparent relationship to any use of the highways intrastate, appellant argues that, as applied to the reserve gasoline in each of appellee's vehicles, the tax either is, or with a reduction of the reserves would be, substantially equivalent to a tax which the state could lay, but has not, on the gasoline consumed within the state. That could be true only in case the taxed gasoline, said to be reserved for the extrastate journey, were by chance or design of substantially the same amount as that consumed intrastate.

That the relationship between tax and highway use does not in fact exist as the business is now conducted, is demonstrated by appellant's showing that on all of appellee's routes, taken together, the taxed gasoline which is reserved for extrastate use is substantially more than that consumed on those routes within the state. In three the taxed reserve in excess of the twenty gallons exemption is substantially the same as the amount of the intra-

state consumption. But on the fourth route the taxed reserve on busses moving in one direction is more than four times that consumed within the state. In the other it is approximately the same. With the three scheduled trips daily each way on the Memphis-St. Louis route, the excess of the gasoline taxed over that consumed in the state is more than 150 gallons per day. In no case does it appear that the amount of taxed gasoline has any relation to the size or weight of vehicles.

It cannot be said that such a tax whose equivalence to a fair charge for the use of the highways, when not fortuitous, is attained only by appellee's abandonment of some of the commerce which is taxed, has any such fair relationship to the use of the highways by appellee as would serve to relieve the state from the constitutional prohibition against the taxation of property moving in interstate commerce. A tax so variable in its revenue production when compared with the taxpayer's intrastate movement cannot be thought to be "levied only as compensation for the use of the highways." *Interstate Transit, Inc.* v. *Lindsey, supra,* 186. Justification of the tax, as a compensation measure, by treating it as the equivalent of one which could be laid on gasoline consumed within the state must fail because the statute on its face and in its application discriminates against the commerce by measuring the tax by the consumption of gasoline moving and used in interstate commerce which occurs outside the state. See *Fargo* v. *Michigan,* 121 U. S. 230, 241; *Gwin, White & Prince* v. *Henneford,* 305 U. S. 434, 438.

It is no answer to the challenge to the levy to say that by altering the amount of the gasoline brought into the state for extrastate consumption appellee could so moderate the tax that it would bear a fair relation to the use of the highways within the state. In the circumstances of this case the state is without power to regulate the amount

of gasoline carried interstate in appellee's tanks. It cannot be said, if that were material, that the amount carried is not appropriate for the interstate commerce in which appellee is engaged and it can hardly be supposed that the state could compel appellee to purchase there all the gasoline which it uses intrastate upon an interstate journey, because that would be a convenient means of laying and collecting a tax for the use of the highways. There are ways enough in which the state can take its lawful toll without any suppression of the commerce which it taxes. In laying an exaction as a means of collecting compensation for the use of its highways the state must tax the commerce as it is done, and not as it might be done if the state could control it. Appellant cannot justify an unlawful exaction by insisting that it would be lawful if the taxpayer were to relinquish some of the commerce which the Constitution protects from state interference.

MR. JUSTICE BLACK, MR. JUSTICE FRANKFURTER, and MR. JUSTICE DOUGLAS, dissenting:

We take a different view. Measured by the oft-repeated judicial rule that every enactment of a legislature carries a presumption of constitutional validity, the Arkansas tax has not, in our opinion, been shown to be beyond all reasonable doubt in violation of the constitutional provision that "Congress shall have power to . . . regulate commerce . . . among the States." "In case of real doubt, a law must be sustained." Mr. Justice Holmes in *Interstate Consolidated Ry. Co.* v. *Massachusetts,* 207 U. S. 79, 88.[1]  Congress, sole constitutional legislative repository of power over that commerce, has

---

[1] Cf. *Ogden* v. *Saunders,* 12 Wheat. 213, 270; *Butler* v. *Pennsylvania,* 10 How. 402; *Booth* v. *Illinois,* 184 U. S. 425; *Henderson Bridge Co.* v. *Henderson City,* 173 U. S. 592, 606, 615; *South Carolina Highway Dept.* v. *Barnwell Bros.,* 303 U. S. 177, 195.

enacted no regulation prohibiting Arkansas from levying a tax—on gasoline in excess of twenty gallons brought into the State—in return for the use of its highways. Gasoline taxes are widely utilized for building and maintaining public roads, and the proceeds of this Arkansas tax are pledged to that end. Arkansas can levy a gallonage tax on any gasoline withdrawn from storage within the State and placed in the tanks of this carrier's vehicles "notwithstanding that its ultimate function is to generate motive power for carrying on interstate commerce." *Edelman* v. *Boeing Air Transport,* 289 U. S. 249, 252. The present tax aims at carriers who would escape such taxation, unless we are to require Arkansas to shape its taxes to the circumstances of each carrier.

The cost entailed by the construction and maintenance of modern highways creates for the forty-eight States one of their largest financial problems. A major phase of this problem is the proper apportionment of the financial burden between those who use a State's highways for transportation within its borders and those who do so in the course of interstate transportation. Striking a fair balance involves incalculable variants and therefore is beset with perplexities. The making of these exacting adjustments is the business of legislation—that of state legislatures and of Congress. This Court has but a limited responsibility in that state legislation may here be challenged if it discriminates against interstate commerce or is hostile to the congressional grant of authority. *McGoldrick* v. *Berwind-White Coal Mining Co., ante,* p. 33.

Arkansas' tax hits the big, heavy busses and trucks which, it is well established, entail most serious wear and tear upon roads. Had Arkansas expressly declared the challenged statute to be a means of working out a fair charge upon these heavy vehicles for cost and maintenance of the roads they travel in the State, the relation-

ship between the means employed and these allowable ends—however crude and awkward—would have been rendered more explicit, but not made more evidently a matter of policy and administration, and therefore not for judicial determination. Certainly, the State had power to impose flat fees or taxes graduated according to gasoline used, horsepower, weight and capacity or mileage, and yet those taxes would not measure with exact precision the taxpayers' use of Arkansas highways.[2] It is not for us to measure the refinements of fiscal duties which a State may exact from these heavy motor vehicles.[3]

This case again illustrates the wisdom of the Founders in placing interstate commerce under the protection of Congress. The present problem is not limited to Arkansas, but is of national moment. Maintenance of open channels of trade between the States was not only of paramount importance when our Constitution was framed; it remains today a complex problem calling for national vigilance and regulation.

Our disagreement with the opinions just announced does not arise from a belief that federal action is unnecessary to bring about appropriate uniformity in regulations of interstate commerce. Indeed, state legislation recently before this Court indicates quite the contrary. For instance, we sustained the right of South Carolina—

---

[2] *Interstate Busses Corp.* v. *Blodgett*, 276 U. S. 245; *Carley & Hamilton* v. *Snook*, 281 U. S. 66; *Continental Baking Co.* v. *Woodring*, 286 U. S. 352; *Hicklin* v. *Coney*, 290 U. S. 169; *Aero Transit Co.* v. *Georgia Comm'n*, 295 U. S. 285; *Morf* v. *Bingaman*, 298 U. S. 407.

[3] If the State had the power to levy the tax, absent congressional proscription, it likewise had the power to extend the grace of exemption to users of its highways of less tank capacity or gasoline load than appellee. Cf. *Continental Baking Co.* v. *Woodring, supra*, 370–3; *Sproles* v. *Binford*. 286 U. S. 374, 396; *Aero Transit Co.* v. *Georgia Comm'n, supra*, 289, 292–3.

in the absence of congressional prohibition—to regulate the width and weight of interstate trucks using her highways, even though the unassailed findings showed that a substantial amount of interstate commerce would thereby be barred from the State. *South Carolina Highway Dept. v. Barnwell Bros.*[4] We did not thereby approve the desirability of such state regulations. It is not for us to approve or disapprove. We did decide that "courts do not sit as legislatures, either state or national. They cannot act as Congress does when, after weighing all the conflicting interests, state and national, it determines when and how much the state regulatory power shall yield to the larger interests of national commerce."[5] As both the Union and the States are more and more dependent upon the exercise of their taxing powers for carrying on government, it becomes more and more important that potential conflicts between state and national powers should not be found where Congress has not found them, unless conflict is established by demonstrable concreteness. See *Hammond* v. *Schappi Bus Line,* 275 U. S. 164.

Even under the principle enunciated by the majority—that Arkansas may not measure her tax by gasoline carried in appellee's tanks for use in other States—the challenged judgment should not stand.

Arkansas admittedly has power to tax appellee upon gasoline used within her borders, and need not, of course, extend to appellee any exemption for a reserve. The record discloses that appellee's busses travel 1188.8 miles each day over Arkansas highways. The trial judge found, and there is evidence to support the finding, that these busses use about one gallon of gasoline for every five miles traveled. Thus, appellee uses about 237.76 gallons

[4] 303 U. S. 177, 190.

[5] *Id.,* 190.

of gasoline a day in Arkansas, upon which the tax of 6.5 cents per gallon used would amount to $15.45 a day.

Appellee's busses travel four different routes, two from Memphis through Arkansas to Missouri, and two from Memphis to cities in Arkansas. On the trips to Missouri the tax now exacted by Arkansas is greater than would be a tax on the gasoline actually used in Arkansas. But on the trips from Memphis into Arkansas and back, the tax exacted, because of the 20-gallon exemption, is less than would be a tax on the gasoline used in Arkansas.

As appellant points out in his brief, when all the routes are taken together, the daily tax which Arkansas would collect if appellee carried only enough gasoline to complete each trip would only amount to $13.00—actually $2.45 less than a tax on gasoline consumed in Arkansas.

This amount—$2.45—equals the present tax on 37 gallons of gasoline. Appellee's busses enter Arkansas 13 times each day. It follows that appellee may carry a reserve of almost three gallons on each trip and still pay no more than the tax which, as the majority assumes, Arkansas could constitutionally impose on the gasoline actually consumed on her own roads. There is nothing in the record to show that a greater reserve is necessary. An interstate carrier has no absolute right to fix the size and character of its equipment used in interstate commerce, in total disregard of the necessities of the enterprise and the requirements of States through which the carrier operates.[6] Exactions by such States may well be designed to operate upon the quantity of gasoline reserves for considerations analogous to those which have called into being state regulations of the size, weight and number of the vehicles themselves. And a state tax which may induce a reduction in the amount of reserve previously

---

[6] *South Carolina Highway Dept.* v. *Barnwell Bros.*, 303 U. S. 177.

188

carried is no more to be condemned on that sole ground alone, than is a state law actually prohibiting vehicles above a certain size or weight. That this reduction may be attributable to a tax rather than to a regulatory measure expressly passed in the interests of public safety should not be controlling. Particularly is this so when the proceeds of the tax are utilized exclusively for highway purposes and the tax itself is directed to gasoline used, just as other equipment is used, in the course of interstate business and involves no manifestation of hostility to—or levy upon—gasoline carried as a commodity in interstate commerce. It is presumably safe to rely on appellee's self-interest to work out any schedules of refueling at its various storage facilities necessitated by changes in reserves carried. We cannot believe that appellee is able to attack the constitutionality of this tax on the ground that as to others it might operate differently and serve to burden the use of gasoline in other States.[7] It is important to bear in mind that we are not passing upon a statute as such but upon the incidence of this statute in the single concrete situation presented by a specific objector on this specific record. The very fact that such niceties of calculation have to be indulged in as the concurring opinion finds necessary in order to establish the mischief of the statute, makes manifest the "real doubt" of any showing of unconstitutionality and indicates that a burden of calculation and speculation is assumed in the exercise of the judicial function which should be left to the legislatures of the States and the Congress.

Judicial control of national commerce—unlike legislative regulations—must from inherent limitations of the judi-

---

[7] *Bourjois, Inc.* v. *Chapman,* 301 U. S. 183, 190; *Monamotor Oil Co.* v. *Johnson,* 292 U. S. 86, 96; see opinion of Mr. Justice Brandeis, *Ashwander* v. *Tennessee Valley Authority,* 297 U. S. 288, 347.

cial process treat the subject by the hit-and-miss method of deciding single local controversies upon evidence and information limited by the narrow rules of litigation. Spasmodic and unrelated instances of litigation cannot afford an adequate basis for the creation of integrated national rules which alone can afford that full protection for interstate commerce intended by the Constitution. We would, therefore, leave the questions raised by the Arkansas tax for consideration of Congress in a nation-wide survey of the constantly increasing barriers to trade among the States. Unconfined by "the narrow scope of judicial proceedings"[8] Congress alone can, in the exercise of its plenary constitutional control over interstate commerce, not only consider whether such a tax as now under scrutiny is consistent with the best interests of our national economy, but can also on the basis of full exploration of the many aspects of a complicated problem devise a national policy fair alike to the States and our Union. Diverse and interacting state laws may well have created avoidable hardships. See, Comparative Charts of State Statutes illustrating Barriers to Trade between States, Works Progress Administration, May, 1939; Proceedings, The National Conference on Interstate Trade Barriers, The Council of State Governments, 1939. But the remedy, if any is called for, we think is within the ample reach of Congress.

[8] See Mr. Chief Justice Taney, dissenting, *Pennsylvania* v. *Wheeling & Belmont Bridge Co.,* 13 How. 518, 592.