MOTOR CARGO, INC., APPELLANT, v. DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, RESPONDENT.

IN THE MATTER OF THE APPEAL OF WILSON FREIGHT FORWARDING COMPANY, INC., FROM THE ASSESSMENT OF ALCOHOLIC BEVERAGE TAXES LEVIED BY THE DEPUTY DIRECTOR, DIVISION OF TAXATION ON SEPTEMBER 15, 1950.

Argued October 6, 1952—Decided November 24, 1952.

*Mr. Samuel Harber* argued the cause for appellant, Motor Cargo, Inc. (*Messrs. Harber & Freesman,* attorneys).

*Mr. Abraham J. Slurzberg* argued the cause for appellant, Wilson Freight Forwarding Company, Inc. (*Mr. James F. McGovern, Jr.,* attorney).

*Mr. Samuel B. Helfand* argued the cause for respondent (*Mr. Theodore D. Parsons,* Attorney-General, attorney).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J.   Is a licensed transporter who is the innocent victim of the theft of an interstate shipment of alcoholic beverages owned by another liable to pay taxes upon the stolen goods under the Alcoholic Beverage Tax Law?   We think not.

Two sealed trailers loaded with cases of whiskeys en route across New Jersey from Kentucky and Indiana to New York upon through bills of lading were stolen by persons unknown in the early morning hours of December 9, 1949 from the Fairview, New Jersey Terminal of Wilson Freight Forwarding Company, a licensed transporter, *R. S.* 33:1–13, while parked temporarily over night awaiting pick-up for delivery in New York by tractors manned by crews affiliated with a New York Teamsters Union Local.   A sealed trailer of Motor Cargo, Inc., also a licensed transporter, loaded with whiskeys shipped upon through bill of lading from Illinois to New York was stolen by persons unknown in the early morning of March 15, 1950 while parked temporarily over night at Motor Cargo's Hoboken terminal awaiting pick-up for delivery in New York.   Both of the Wilson trailers were recovered later in the day of December 9, 1949 in New York State, one near Newburgh and the other near Goshen.   The first named still contained about one-fifth of its cargo, but the second was empty.   The Motor Cargo trailer was found deserted, and empty, on a New York City street on March 15, 1950.

The Beverage Tax Bureau assessed Wilson a tax of $5,173.20 upon the stolen liquor, exempting from the tax only the portion recovered in the trailer found near Newburgh.   Motor Cargo, Inc. was assessed a tax of $2,448 upon the entire contents of its trailer.   Each paid the tax against it under protest, and appealed to the Division of Tax Appeals, which affirmed both assessments.   The transporters' appeals to the Appellate Division from the respective judgments of the Division of Tax Appeals have been certified to this court of its own motion.

█ The primary question on the appeals is whether the Legislature provided for a tax against licensed transporters in the circumstances presented in the instant cases. *R. S.* 54:43–6 imposes the tax in respect of beverages involved in "illegal acts in this state," but that section is not applicable nor is it invoked by the State. It applies only to persons who manufacture, possess, distribute, transport, or offer for sale alcoholic beverages in violation of a federal or state statute or who conspire to do any such acts. The State admits that appellants were duly licensed transporters legitimately carrying on their business within the terms of their licenses and that they were not culpably involved in the thefts. The State relies upon *R. S.* 54:43–1, which imposes the tax upon any "sale" of alcoholic beverages within this State or upon any "delivery" thereof made within this State. There may, of course, be a "delivery" without a "sale." The statutory scheme to tax either event occurring in this State is obvious recognition that an individual taxpayer may in given circumstances reasonably be taxed as upon the one and not as upon the other.

█ It is an elementary rule that taxes "cannot be imposed upon an individual unless he is explicitly brought within the terms of the taxing act." *Public Service, etc., Transport v. State Bd. Tax Appeals, et al.,* 115 *N. J. L.* 97 (*Sup. Ct.* 1935). Are the appellants in the instant circumstances persons contemplated by the Legislature as taxable upon a "sale"? We find nowhere in the statute any evidence to support the State's contention that such was the intent, and much to oppose that contention. A "sale" usually imports a transfer of property in the goods by the owner or by one authorized in his behalf to transfer such property. 46 *Am. Jur., Sales, p.* 194. Here appellants were not the owners of the stolen liquors and had no authority to sell them. Moreover they could not lawfully sell or offer them for sale with or without the permission of the owners without violating the terms of their licenses which authorized them only "to transport alcoholic beverages into, out of,

through and within the state of New Jersey and to maintain a warehouse." *R. S.* 33:1–13. Authority to "distribute and sell" is reserved to such as manufacturers, wholesalers and retailers licensed so to do. . *R. S.* 33:1–10, 11 and 12. Whether one licensed only to transport attempting to sell in violation of his license would be taxable as upon a "sale" under *R. S.* 54:43–1 or under *R. S.* 54:43–6 as being involved in "an illegal act," or under both sections, is a question not before us. It is sufficient that we think that there may fairly be inferred from the context of the statute as a whole a purpose to tax a licensed transporter of the beverages of others, sought to be taxed in circumstances which involve no claim of a violation of his license, not as upon a "sale" but, if at all, as upon a "delivery" of such beverages within the State. The care taken by the Legislature in several sections of the statute to distinguish between "transportation" and "sale" buttresses this interpretation. See *R. S.* 54:42–2, *R. S.* 54:43–2, *R. S.* 54:43–6, *R. S.* 54:45–1.

This construction of the statute disposes of the State's contention that the statutory definition that a "sale" shall include a "theft," and the provision that stolen beverages "shall be deemed to have been sold" within this state, *R. S.* 54:41–2, support the assessments. Indeed, to interpret the statute as making such definition applicable to these carriers, who were the innocent victims of the thefts, who were not the owners of the goods and had no authority to transfer the property in them, and whose trailers, one still partly loaded, were recovered in the State of New York, would constitute such application of the statute a clear denial to appellants of the equal protection of the laws in violation of the Fourteenth Amendment to the Federal Constitution. The statutory inference, if applied to the carriers in such circumstances, is so strained and so utterly without a "reasonable relation to the circumstances of life as we know them," *Tot v. United States,* 319 *U. S.* 463, 63 *S. Ct.* 1241, 87 *L. Ed.* 1519 (1943), as to be plainly arbitrary and unreasonable. Such a palpably fictitious measure of the tax

must be rejected as clearly arbitrary. See *Ring v. North Arlington*, 136 *N. J. L.* 494 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 24 (1948), appeal dismissed 335 *U. S.* 889, 69 *S. Ct.* 250, 93 *L. Ed.* 427 (1948); *Lane Distributors, Inc., v. Tilton*, 7 *N. J.* 349 (1951); *In re Vanderbilt's Estate*, 281 *N. Y.* 297, 22 *N. E. 2d* 379 (*Ct. App.* 1939), affirmed *Whitney v. State Tax Comm.*, 309 *U. S.* 530, 60 *S. Ct.* 635, 84 *L. Ed.* 909 (1940).

Furthermore, the application of the legislative fiction upon the facts admitted here constitutes the taxes a material and onerous obstruction of the free flow of interstate commerce, in contravention of the commerce clause of the Federal Constitution. The commerce clause ordinarily operates to exempt from state taxes goods actually in transit in interstate commerce. *State of Minnesota v. Blasius*, 290 *U. S.* 1, 54 *S. Ct.* 34, 78 *L. Ed.* 131 (1933). The interstate movement of the beverages in the instant cases did not cease when the sealed trailers were temporarily parked awaiting pick up. *Lehigh & Wilkes-Barre Coal Co. v. Junction*, 75 *N. J. L.* 922 (*E. & A.* 1908); *State, Detmold & Cox v. Engle*, 34 *N. J. L.* 425 (*Sup. Ct.* 1871); *United States v. Gollin*, 166 *F. 2d* 123 (3 *Cir.*, 1948), *certiorari* denied 333 *U. S.* 875, 68 *S. Ct.* 905, 92 *L. Ed.* 1151 (1948); cf. *Independent Warehouses, Inc., v. Scheele*, 134 *N. J. L.* 133 (*E. & A.* 1946), affirmed 331 *U. S.* 70, 67 *S. Ct.* 1062, 91 *L. Ed.* 1346 (1947). It is in high degree arbitrary to deny the transporters the immunity from the tax which by force of the commerce clause they enjoyed to the time of the thefts by the application of a legislative fiction that, although they were innocent victims and were not the owners of the goods and were without authority to transfer the property therein and the stolen trailers were recovered in the State of New York, the stolen beverages are to be "deemed to have been sold" by them within the State of New Jersey.

And there is no merit in the State's argument that the Twenty-first Amendment to the Federal Constitution

588

has entirely relieved the states of the limitations of the commerce clause and of the Fourteenth Amendment by prohibiting "the transportation or importation into any state * * * for delivery or use therein of intoxicating liquors, in violation of the laws thereof," the State contending that, since importation of intoxicating liquors into the state may be absolutely prohibited, the lesser step of strict regulation is manifestly authorized and further, that as there is judicial recognition in our cases that the liquor traffic is "a subject by itself, to the treatment of which all the analogies of the law, appropriate to other topics, cannot be applied," *Hudson Bergen Ass'n v. Hoboken*, 135 *N. J. L.* 502 (*E. & A.* 1947), our determination of the question of the constitutional sufficiency of the application of the statute must be made "without regard to the limitations contained in the commerce clause or the provisions of the Fourteenth Amendment."

In the first place, the legislative history of the provision that a "sale" shall include a "theft" and the stolen goods "be deemed to have been sold" shows that the Legislature purposed the provision as a revenue measure and not as a regulatory measure. It was not in the statute as originally enacted, *L.* 1933, *c.* 434, *p.* 1160. It was added by an amendment made by *L.* 1938, *c.* 319, *p.* 795. A like provision first appeared in the Motor Fuels Tax Law when added by an earlier 1938 statute, *chapter* 283, *p.* 610. This followed a decision of the former State Board of Tax Appeals in 1937 that a distributor of motor fuel whose fuel was stolen was not obliged to pay a tax upon the stolen fuel as upon a "sale." *Weinstein v. State Board, N. J. Tax Reports* 1934–1939, *p.* 466. Such a provision also appears in the Cigarette Tax Law enacted by *L.* 1948, *c.* 65, *p.* 153. The fair implication is that the provision was adopted in aid of the collection of taxes and is not truly regulatory in character.

Assuming a regulatory purpose, however, the result proscribed by both the commerce clause and the Fourteenth

Amendment in the instant circumstances is not sanctioned by the Twenty-first Amendment. The United States Supreme Court has said that "shipment through a state is not transportation or importation into the state within the meaning of the (Twenty-first) amendment," *Carter v. Commonwealth of Virginia,* 321 *U. S.* 131, 64 *S. Ct.* 464, 88 *L. Ed.* 605 (1944); *Collins v. Yosemite Park & Curry Co.,* 304 *U. S.* 518, 58 *S. Ct.* 1009, 82 *L. Ed.* 1502 (1938). The cases in which that court has said that the limitations of the commerce clause and the Fourteenth Amendment do not inhibit state action in light of the Twenty-first Amendment have concerned legislation prohibiting or controlling the sale and use of alcoholic beverages within the state; imposing license taxes for the privilege of importing beer into a state for domestic consumption, *State Board of Equalization v. Young's Market Co.,* 299 *U. S.* 59, 57 *S. Ct.* 77, 81 *L. Ed.* 38 (1936), or discriminating between domestic and imported intoxicating liquors sold therein, *Mahoney v. Joseph Triner Corp.,* 304 *U. S.* 401, 58 *S. Ct.* 952, 82 *L. Ed.* 1424 (1938); or prohibiting the sale within the state of beer manufactured in another state in retaliation against the laws of that state, *Indianapolis Brewing Co. v. Liquor Control Com., Michigan,* 305 *U. S.* 391, 59 *S. Ct.* 254, 83 *L. Ed.* 243 (1939), *Joseph S. Finch & Co. v. McKittrick,* 305 *U. S.* 395, 59 *S. Ct.* 256, 83 *L. Ed.* 246 (1939); or limiting the transportation of liquors produced in the state to trucking by licensed carriers, *Ziffrin, Inc., v. Reeves,* 308 *U. S.* 132, 60 *S. Ct.* 163, 84 *L. Ed.* 128 (1939).

Nor is the State's contention supported by the decisions which have upheld legislation touching interstate shipments of intoxicating liquors, not upon the basis of the Twenty-first Amendment but upon holdings that such legislation was not foreclosed by the commerce clause, at least in the absence of federal regulation. These were statutes requiring regulatory licenses for through shipments of alcoholic beverages, *Duckworth v. Arkansas,* 314 *U. S.* 390, 62 *S. Ct.* 311, 86 *L. Ed.* 294 (1941), compelling a carrier to

furnish information necessary for checking the shipment against unlawful diversion and requiring that the truck follow a direct, stated route, *Carter v. Commonwealth of Virginia, supra, Chambless v. Cannon,* 81 *F. Supp.* 885 (*D. C. W. D. Ark.,* 1949), or requiring a reasonable bond of one who engages in the interstate transit of alcoholic beverages to assure the interstate journey is completed, *California v. Thompson,* 313 *U. S.* 109, 61 *S. Ct.* 930, 85 *L. Ed.* 1219 (1941). Such legislation was deemed not to "Forbid the traffic in liquor, nor does it impede it more than is reasonably necessary to inform the local authorities who is to effect the transportation through the state, and to afford opportunity for them to police it." *Duckworth v. Arkansas, supra,* 314 *U. S.,* at *page* 393, 62 *S. Ct.,* at *page* 313, 86 *L. Ed.,* at *page* 296. That the interpretation of the Alcoholic Beverage Tax Law urged upon us by the State applied to facts in the instant cases unreasonably burdens the free flow of commerce and arbitrarily denies appellants the equal protection of the laws is very apparent.

We come then to the question, Has the legislature evinced a purpose to make the provisions of the Alcoholic Beverage Tax Law applicable to these appellants as upon a "delivery" by them of the beverages within the State? We think the contrary is made evident in the statute itself. "Delivery" is used in the statute in its ordinary meaning. There is no artificial definition here that "delivery" includes "theft," or that the stolen goods shall be deemed to have been delivered. Alcoholic beverages imported into this State "which are not intended for sale or delivery herein and which pass through this state in continuous transportation and are delivered to a point outside of this state" are exempted from the tax. *R. S.* 54:43–2, as amended by *L.* 1942, *c.* 171, *p.* 527. Although the transit of the liquors was temporarily interrupted by the parking of the trailers at the terminals awaiting pick-up, they were within the exemption as beverages "in continuous transportation" through the State. *Lehigh & Wilkes-Barre Coal Co. v.*

*Junction, supra; State, Detmold & Cox v. Engle, supra; United States v. Gollin, supra.* And, while they never reached their intended consignees, the statute in such case subjects the transporter to the tax only if he "fails" to complete the delivery "by reason of the delivery or other disposition" of the beverages to another within this State, in which circumstance the transporter "and the person to whom he shall deliver" are liable for the tax. "Delivery" and "disposition" are words importing volition by the transporter in parting with the beverages within this state, that is, a knowing delivery or disposition to another. Here the liquors were stolen from appellants against their will and without their knowledge and they are thus not within the class of transporters subjected to the tax as upon a "delivery."

The judgments of the Division of Tax Appeals are reversed with direction to cancel the assessments and to refund to the appellants the Alcoholic Beverage Taxes paid by each.

JACOBS, J. (dissenting). In his oft-quoted opinion in *Paul v. Gloucester County,* 50 *N. J. L.* 585, 595 (*E. & A.* 1888), Justice Van Syckel pointed out that the sale of intoxicating liquor has always been dealt with by our Legislature in an exceptional way and that "It is a subject by itself, to the treatment of which all the analogies of the law, appropriate to other topics, cannot be applied." Its inherent dangers are evident and need not be recounted here. While the federal prohibitory effort failed and each State was left with its own determination, our Legislature in the companion Alcoholic Beverage Control Act (*L.* 1933, *c.* 436) and Alcoholic Beverage Tax Act (*L.* 1933, c. 434) wisely and with impressive results made adequate provisions for rigid curbs. Although many of their restrictive requirements would be unduly severe in other fields, they appear to be not without reason in this field.

One of the many troublesome problems which early confronted the authorities resulted from claims, often suspect, that liquor which had admittedly been in the possession of licensees had disappeared through theft or otherwise and should not be taxed as though sold within *R. S.* 54:43–1; that section comprehensively imposes the alcoholic beverage tax on every sale within New Jersey. The Legislature in an amendment of *R. S.* 54:41–2 dealt with the matter in unmistakable language by providing that the word "sale" as used in the Alcoholic Beverage Tax Act shall, in addition to its ordinary meaning, include any theft or other disposition and that in every case where alcoholic beverages are "stolen or otherwise disposed of, they shall be deemed to have been sold." Another problem confronting the authorities resulted from situations in which alcoholic beverages possessed by licensees in New Jersey were claimed to have been shipped out of the State generally for taxable sale there. In *R. S.* 54:43–2 the Legislature has from time to time dealt with this problem by providing specifically for tax exemption where it satisfactorily appears that the alcoholic beverages which had been possessed within the State were actually shipped out of the State. Included is a provision to the effect that alcoholic beverages which are brought into New Jersey but are not intended for sale or delivery therein "and are delivered to a point outside of this State" shall be exempt from the tax imposed by the Act; this provision expressly states that if any transporter fails to consummate the delivery of the alcoholic beverages "to a point outside of this State" then the transporter shall be liable for the tax by reason of its delivery "or other disposition." The legislative purpose seems clear; if the licensee simply transports the alcoholic beverages through the State and they actually leave the State, then they are exempt from taxation; if, however, the licensee fails to effect their removal from the State, then he is liable for the tax as though sold therein.

In construing the statutory language our function is to ascertain and give effect to the legislative meaning. See *Board of National Missions v. Neeld*, 9 *N. J.* 349, at *p.* 362 (1952). The statutory language, either considered alone or in the light of its history, purpose and context (*Ablondi v. Board of Review,* 8 *N. J. Super.* 71, 75 (*App. Div.* 1950)) leaves little doubt that the Legislature meant to impose the statutory tax where alcoholic beverages are brought into the State by any licensee, including a transporter, and are not taken out of the State because of alleged theft or other disposition. The wisdom of the State's refusal to undertake the burden of differentiating between real and simulated thefts and losses with its occasional resulting severity is, of course, a matter of legislative rather than judicial concern.

The majority opinion asserts that the statute if thus construed would be "a clear denial to appellants of the equal protection of the laws in violation of the Fourteenth Amendment to the Federal Constitution." It seems that this ignores the nature of the subject matter with which we are dealing. Apart from the commerce clause the Legislature may undoubtedly prohibit all possession of alcoholic beverages within New Jersey and may impose prohibitory taxation on such possession; that being so, what constitutional restriction may be said to forbid a much lesser restriction applied equally, namely, the payment of tax where any licensee voluntarily brings liquor within the State, no longer possesses it, and fails to establish that he has taken it out of the State. See *Ziffrin, Inc., v. Reeves*, 308 *U. S.* 132, 138, 60 *S. Ct.* 163, 84 *L. Ed.* 128, 135 (1939), where the court said:

"Having power absolutely to prohibit manufacture, sale, transportation, or possession of intoxicants, was it permissible for Kentucky to permit these things only under definitely prescribed conditions? Former opinions here make an affirmative answer imperative. The greater power includes the less. *Seaboard Air Line R. Co. v. North Carolina*, 245 *U. S.* 298, 38 *S. Ct.* 96, 62 *L. Ed.* 299, *supra*. The state may protect her people against evil incident to intoxicants, *Mugler v. Kansas*, 123 *U. S.* 623, 8 *S. Ct.* 273, 31 *L. Ed.*

205; *Kidd v. Pearson*, 128 *U. S.* 1, 9 *S. Ct.* 6, 32 *L. Ed.* 346, 2 *Inters. Com. Rep.* 232, and may exercise large discretion as to means employed."

*Cf. State Bd. of Equalization v. Young's Market Co.*, 299 *U. S.* 59, 63, 57 *S. Ct.* 77, 81 *L. Ed.* 38, 41 (1936).

Finally, the majority opinion takes the position that as thus construed the legislation violates the commerce clause of the United States Constitution even as limited by the Twenty-First Amendment. It may be assumed that our Legislature would have no constitutional authority to forbid all through shipments of alcoholic beverages in interstate commerce; it has not attempted to do so. In effect, it has simply stated that such through shipments are permissible · upon condition that the licensed transporter be under absolute obligation to remove from the State liquor which he has brought into the State, and that if he fails to establish that the liquor was actually removed from the State it will be presumed that it was ultimately sold within New Jersey and he shall pay the tax thereon as though sold. The United States Supreme Court has gone to great lengths in sustaining sweeping restrictive regulations, short of prohibition, imposed by States on through shipments of liquor. See *Carter v. Virginia*, 321 *U. S.* 131, 64 *S. Ct.* 464, 88 *L. Ed.* 605 (1944); *Duckworth v. Arkansas,* 314 *U. S.* 390, 62 *S. Ct.* 311, 86 *L. Ed.* 294 (1941). Under its decisions it would seem that a dry state could, without offending the commerce clause, impose requirements designed to make certain that liquor on a through shipment actually leaves its borders; I incline· towards the belief that such requirements may properly include the exaction of a money payment from a transporter who brought liquor into the State but failed to establish its removal therefrom. *Cf. Frankfurter, J.,* in *Carter v. Virginia, supra.* And if a dry state may do so why may not our Legislature do the same in the belief that its stringent requirement will not only eliminate spurious thefts but will also induce out-of-state motor carriers, such as the appellants, ·to provide extra precautions

against real thefts which help feed illicit channels of liquor distribution within the State. In any event, the broad expressions by the Supreme Court supporting highly restrictive local policies in the liquor field lead me to the conclusion that our court should not reach out in the instant matter to strike down, under the commerce clause, the pertinent legislative requirement found in the Alcoholic Beverage Tax Act. *Cf.* Black, J., in *Carter v. Virginia, supra*:

"I am not sure that state statutes regulating intoxicating liquor should ever be invalidated by this Court under the Commerce Clause except where they conflict with valid Federal statutes. *Cf.* dissenting opinions, *McCarroll v. Dixie Greyhound Lines,* 309 *U. S.* 176, 183, 60 *S. Ct.* 504, 84 *L. Ed.* 683, 688; *Gwin, White & Prince v. Henneford,* 305 *U. S.* 434, 442, 59 *S. Ct.* 325, 83 *L. Ed.* 272, 278; *J. D. Adams Mfg. Co. v. Storen,* 304 *U. S.* 307, 316, 58 *S. Ct.* 913, 82 *L. Ed.* 1365, 1372, 117 *A. L. R.* 429. The Twenty-first Amendment has placed liquor in a category different from that of other articles of commerce. Though the precise amount of power it has left in Congress to regulate liquor under the Commerce Clause has not been marked out by decisions, this much is settled: local, not national, regulation of the liquor traffic is now the general constitutional policy. *Ziffrin, Inc. v. Reeves,* 308 *U. S.* 132, 60 *S. Ct.* 163, 84 *L. Ed.* 128; *Indianapolis Brewing Co. v. Liquor Control Commission,* 305 *U. S.* 391, 59 *S. Ct.* 254, 83 *L. Ed.* 243; *State Bd. of Equalization v. Young's Market Co.,* 299 *U. S.* 59, 57 *S. Ct.* 77, 81 *L. Ed.* 38."

Chief Justice VANDERBILT has authorized me to state that he joins in this dissent.

*For reversal*—Justices HEHER, OLIPHANT, WACHENFELD, BURLING and BRENNAN—5.

*For affirmance*—Chief Justice VANDERBILT, and Justice JACOBS—2.