**Harold STROUPE, Appellant,**

**v.**

**George M. TIDWELL, Commissioner of Revenue, State of Tennessee, Appellee.**

Supreme Court of Tennessee.

Feb. 19, 1974.

Rehearing Denied May 6, 1974.

Hughie Ragan, Jackson, for appellant.

David M. Pack, Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Nashville, for appellee.

## OPINION

W. M. LEECH, Special Justice.

This cause was originally heard before Chancellor Frank F. Drowota, III, in the Chancery Court for Davidson County, upon petition for writ of certiorari seeking to review an order of the Commissioner of Revenue of the State of Tennessee, whereby six hundred cases of beer had been seized by the Sheriff of Henderson County, Tennessee and possession delivered to the Commissioner of Revenue as contraband. The Commissioner relied upon the "Rules and Regulations Pertaining to Beer and Alcoholic Beverages of not more than Five Per Cent of Weight", and especially Rule 7 as promulgated by the Department of Revenue under the provisions of T.C.A. § 57–232. The Chancellor affirmed the Commissioner, and dismissed the petition, and upon appeal the Court of Appeals reversed, holding that the beer was not contraband; that the regulation required documentation not authorized by statute and was therefore too broad; and, that, in any event, the search and seizure of the beer was illegal.

The facts incident to the seizure are briefly as follows: The sheriff of Henderson County had reliable information that beer was being moved at night, by truck, through his county to sister states. That the method of operation was for the truck to be accompanied by an automobile. That the trucks were "bob" trucks. That at about midnight on the night in question, he noticed an automobile and a van truck, both with out-of-state license tags (a van truck fits the description "bob" truck) leaving a service station. Recalling his information, he asked the station attendant about the vehicles and was told that the truck stopped there "often, most every night." The attendant did not know, however, what the trucks were hauling.

The sheriff then pursued the truck toward Lexington, Tennessee at speeds up to ninety miles per hour, and when he was unable to overtake it at this speed, he radioed the city police to stop the truck north of the city. This was done. The sheriff arrived immediately thereafter and the following occurred:

"Upon approaching the scene, Mr. Harold Stroupe, the driver of the truck, was out, coming back toward me. I asked what he had on his truck, and he stated that it was loaded with beer. I asked him to show me a bill of lading, and he said he didn't have one.

"I immediately placed him under arrest, and carried him to Henderson County jail.

"Q. All right. Did you actually see the beer on the truck?

"A. I did not at that time, no, sir."

\*   \*   \*   \*   \*   \*

"Q. I believe you have testified you asked him for bills of lading or receipts, documents, is that correct?

"A. First I asked him to show me a bill of lading. He stated he didn't have one. Later he showed me some three slips of—I believe it was sales slips, when he purchased the beer in Kentucky.

"Q. All right. When did he show you these sales slips?

"A. I believe there at the scene."

The regulation of the Revenue Department is as follows:

"Rule 7. *Rules and Regulations Pertaining to Beer and Alcoholic Beverages of not more than Five Per Cent by Weight.*

"*Interstate Shipments.* Interstate shipments of beer or other such beverages into or through the State of Tennessee, other than by a common carrier as contemplated by either Sections 57–230 or 57–231, Tennessee Code Annotated, must be accompanied and supported by an invoice, bill of sale, or bill of lading showing the true name and complete address of the consignor and the true name and complete address of the licensed consignee showing his street and number, rural route, or other postal address. Such invoices, bills of sale, or bills of lading shall show the dates of shipment or purchase, invoice or bill of lading number, the number of cases, cartons or containers, the number of such containers to the case, carton or container, and the brand name of the beer or other such beverages. Such invoices, bills of sale or bills of lading shall show, if purchased from a consignor having more than one location, the exact name and address of the consignor where purchased or loaded. *Any such shipments invoiced to a consignee who is not licensed to sell beer or other such beverages, whether within or without Tennessee, shall be deemed to be contraband and subject to seizure.* Any official authorized to enforce the provisions of the beer tax law under Section 57–201, et seq., of the Tennessee Code Annotated, shall be authorized to hold without warrant all such shipments of beer or other such beverages until such time as it can be determined whether or not the consignee listed on the invoice in possession of the transporter is duly licensed to sell beer at the address shown on the invoice." (Emphasis added).

At the time Stroupe was stopped, he did not have a bill of lading. He only had sales slips showing himself as purchaser. He testified that he was not licensed to sell beer in any state.

The Court of Appeals measured the regulation against T.C.A. § 57–230, which reads as follows:

"57–230. *Interstate shipments through Tennessee excepted—Documents required.*—The provisions of §§ 57–224—57–238 shall not be construed as being applicable to interstate shipments through the state of Tennessee where such shipments are accompanied and supported by proper invoices or bills of lading, containing such information as the commissioner may require."

It is clear that the regulation should have been tested by § 57–231 T.C.A. as follows:

"57–231. *Interstate shipment into Tennessee by roadway or other means—Documents required—Inspection—Violations.*—It shall be unlawful for any person to transport into the state of Tennessee upon any public roadway or by any means whatever within this state any beer and/or other such beverages from any other state, nation or other territory unless the person accompanying and in charge of such shipment shall have present and available for exhibition such

bills of lading, evidence of ownership and/or shipment as the commissioner of revenue may by rule or regulation require. No such person or driver of any vehicle, vessel, or craft shall refuse to exhibit or refuse to permit to be read and/or examined any such bill of lading, evidence of ownership and/or shipment, or refuse to permit examination of his cargo or vehicular contents by an agent or employee of the commissioner or any police officer, highway patrolman, sheriff, deputy sheriff or duly authorized officer of a municipal corporation within the state of Tennessee or governmental division thereof. Each, any and all of the said officers are entitled to demand, examine and/or read the same, and a refusal to produce the documents referred to in this section or voluntarily permit examination of ·cargo or vehicular contents is a violation."

As the shipment was by truck, moving over Tennessee roadways, this is the applicable statute.

This statute requires the transporter to have available for exhibition "bills of lading, evidence of . . . shipment as the commissioner of revenue may by rule or regulation may require", so the question that arises is whether, in order to avoid diversion of shipments of beer into Tennessee, this provision can be read as authorizing the requirements of the regulation that the shipment be accompanied by a bill of lading and that the consignee be licensed either in Tennessee or in the state of destination.

The holding by the Court of Appeals that the beer was not contraband is based on the first paragraph of § 57–232 T.C.A., which is as follows:

"57–232. *Contraband—What constitutes —Confiscation.*—Any beer or other beverage of alcoholic content of not more than five per cent (5%) by weight sold or offered for sale by, or in possession of, a retailer purchased from any person, firm or corporation, except a Tennessee

wholesaler or distributor licensed in this state, is declared to be contraband and shall be subject to confiscation by the commissioner or any duly authorized representative, highway patrolman, sheriff or other peace officer."

As to this the Court of Appeals opinion says:

"It should be noted that the statute applies to beer or other alcoholic beverages offered for sale by or in possession of a *retailer*. There was no evidence before the arresting officers or in this record that petitioner was or is a retailer and certainly nothing to the effect that he offered the beer for sale in Tennessee or elsewhere."

Here, again, the wrong statutory provision has been applied. The second paragraph of § 57–232 T.C.A. is the applicable provision. It reads:

"Any beer and/or any other such beverages imported into this state or in transit within this state, or in the possession of any person or firm within this state not in accordance with the provisions of . . . this chapter and the rules and regulations promulgated pursuant thereto are declared to be contraband, and the same, along with any vehicle, not a common carrier, in which such products are being transported, may be seized by the commissioner or any duly authorized representative, highway patrolman, sheriff, or other peace officer, with or without a warrant. Any such beer, other beverages or vehicles so seized shall be delivered promptly to the department of revenue for disposition."

Nothing else appearing, the beer would be contraband under this statute.

Sections 57–230 and 57–231 T.C.A. recognize the protection afforded interstate commerce respecting beer shipments *legitimately in* interstate commerce. By statute the Commissioner of Revenue has been given authority to prescribe the information to be contained in proper documents

which would identify the shipments as being *legitimately in* interstate commerce, and the purpose of the regulation is to prevent the unlawful diversion of the liquor from interstate commerce into the territory of the State of Tennessee.

The Supreme Court of the United States has held that the Twenty-first Amendment[1] sanctions the right of a state to regulate with respect to intoxicating liquors brought from without the state unfettered by the Commerce Clause or the Equal Protection Clause of the Federal Constitution. The cases relied upon and cited by the Court of Appeals only hold that the state cannot prohibit *legitimate* interstate transportation, and these cases do not hold that the state is powerless to regulate such transportation. These cases are consistent with the Twenty-first Amendment and not contrary to the right of the state to regulate.

In State Board of Equalization of California, et al. v. Young's Market Company, et al., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38 (1936), wherein the District Court of Southern California, restrained the enforcement of a state statute imposing a license fee on the privilege of importing beer into the state, the Supreme Court in an opinion by Mr. Justice Brandeis, reversed the lower court and held that under the Twenty-first Amendment, the state statute did not violate the Commerce Clause. In that case the Court said:

"Surely the state may adopt a lesser degree of regulation than total prohibition."

In two other cases of the Supreme Court of the United States wherein the statutes in question were held to prohibit transportation, but recognized that a state may regulate the legitimate transportation of intoxicating liquors through and across its territory are Hostetter v. Idlewild Liquor Corp., 377 U.S. 324, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964), and Collins v. Yosemite Park Co., 304 U.S. 518, 58 S.Ct. 1009, 82 L.Ed. 1502 (1938).

In *Hostetter,* the Court in speaking of *Collins,* said:

"We may assume that if in Collins, California had sought to regulate or control the transportation of the liquor there involved from the time of its entry into the state until its delivery at the national park, in the interest of preventing unlawful diversion into her territory, California would have been constitutionally permitted to do so. But the Court held that California could not prevent completely the transportation of the liquor across the State's territory for delivery and use in a federal enclave within it."

Carter v. Commonwealth of Virginia, 321 U.S. 131, 64 S.Ct. 464, 88 L.Ed. 605 (1944), involved a regulation of the Virginia Alcoholic Beverage Control Board. The Virginia regulations are: "(1) The vehicle must use the most direct route and carry a bill of lading, showing the route it will travel; (2) The carrier must post a bond in the penal sum of $1,000.00 conditioned on lawful transportation; and (d) The bill of lading must show the name of the true consignee, and that consignee must have a legal right to receive the beverage at the stated destination."

Mr. Justice Reed delivered the opinion of the Court and said:

"We have recognized that the several states in the absence of Federal legisla-

---

1. "§ 1. *Repeal of eighteenth amendment.*—The eighteenth article of amendment to the Constitution of the United States is hereby repealed.

"§ 2. *Intoxicating liquors, shipment into dry territory prohibited.*—The transportation or importation into any State, Territory, or Possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

"§ 3. *Ratification, time limit.*—This article shall be inoperative unless it shall have been ratified as an amendment to the Constitution by conventions in the several States, as provided in the Constitution, within seven years from the date of the submission hereof to the States by the Congress."

tion may require regulatory licenses for through shipments of liquor in order to guard against violation of their own laws. Duckworth v. Arkansas, 314 U.S. 390, 62 S.Ct. 311, 86 L.Ed. 294, 138 A.L. R. 1144. Thus this Court has extended to this very field its recognition that regulation of interstate commerce by local authority in the absence of Congressional action is admissible to protect the state from injuries arising from that commerce. (citing cases) The commerce power of Congress is not invaded by such police regulations as Virginia has here enforced."[2]

The Virginia statutes and regulations are more restrictive than those of Tennessee.

■ We hold that Rule 7 of the Regulations of the Department of Revenue is in conformity with the second paragraph of Section 57–232 T.C.A., and is therefore a valid and reasonable regulation of the transportation of intoxicating liquors across the State of Tennessee under the Twenty-first Amendment and the federal cases cited herein.

■ The Court of Appeals, after declaring the Regulation of the Revenue Department invalid, then held that the search and seizure of the cargo was illegal. Since we hold that the statutes declare the beer to be contraband and we hold the regulations valid, the reasoning of the Court of Appeals on this question does not apply. The truck was stopped for the primary

purpose of enforcing the revenue laws of the state, not the criminal laws. Stroupe's admissions that he was transporting beer, did not have a bill of lading, and that he only had sales receipts, justified the capture of the beer under the statute and the regulation, and the capture of the beer and its confiscation as contraband do not involve the constitutional rights protected by *Miranda*.

The driver told the sheriff on inquiry that the truck was loaded with beer, and it was only after the driver was unable to produce a bill of lading of any kind, much less one made out to a licensed consignee as required by the regulation, was the cargo confiscated. The sheriff did not arrest the defendant upon the basis of the actions of the deputy sheriff, who while the sheriff was talking to Stroupe as above set out, opened the door of the truck and saw the beer, but the sheriff acted upon the information given him by Stroupe.

■■ Even if the actions of the deputy invalidated the search, Stroupe cannot recover the beer. The cargo of beer in this case was contraband per se under Section 57–232 T.C.A., and the Regulations of the Department of Revenue. Where the thing seized is contraband, the right to have it returned is not governed by the law of search and seizure, but by the law of contraband. In Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), the Court said:

"It follows that it was error to refuse petitioners' motion to exclude and sup-

2. In a concurring opinion by Mr. Justice Black, he stated:
"I am not sure that state statutes regulating intoxicating liquor should ever be invalidated by this Court under the Commerce Clause except where they conflict with valid federal statutes. Cf. dissenting opinions, McCarroll v. Dixie Greyhound Lines, Inc., 309 U.S. 176, 183, 60 S.Ct. 504, 507, 84 L. Ed. 683; Gwin, White & Prince, Inc. v. Henneford, 305 U.S. 434, 442, 59 S.Ct. 325, 329, 83 L.Ed. 272; Adams Manufacturing Co. v. Storen, 304 U.S. 307, 316, 58 S. Ct. 913, 918, 82 L.Ed. 1365, 117 A.L.R. 429. The Twenty-first Amendment has placed li-

quor in a category different from that of other articles of commerce. Though the precise amount of power it has left in Congress to regulate liquor under the Commerce Clause has not been marked out by decisions, this much is settled: local, not national, regulation of the liquor traffic is now the general Constitutional policy. Ziffrin, Inc. v. Reeves, 308 U.S. 132, 60 S.Ct. 163, 84 L.Ed 128; Indianapolis Brewing Co. v. Liquor Control Commission, 305 U.S. 391, 59 S.Ct. 254, 83 L.Ed. 243; State Board of Equalization of California v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38."

press the property which was improperly seized. *But since [it] was contraband, they have no right to have it returned to them.*" (Emphasis added).

A serious question arises as to whether this case should have been appealed directly to this Court in the first instance. The confiscation proceeding was in aid of the collection of the state tax on beer, and involved the construction of statutes and regulations which are a part of the state beer tax statutory system. This Court alone has jurisdiction of cases involving state revenue. However, since this question was not raised, we shall, at this time pretermit it, as the results would be the same.

For the reasons herein assigned, the judgment of the Court of Appeals is reversed, and the decree of the Chancellor affirmed.

DYER, C. J., and CHATTIN, McCANLESS and FONES, JJ., concur.

## OPINION ON PETITION TO REHEAR

W. M. LEECH, Special Justice.

A petition to rehear has been filed in this cause relying in part upon the law of search and seizure. This action however, is not criminal, rather it is a civil action brought by the State to enforce the regulations of the Department of Revenue concerning the transportation of intoxicating liquors within and through this state. Said regulations required certain documentary evidence in order to legitimately transport intoxicating liquors which Stroupe did not have.

█ The thrust of petitioner's defense is that the regulations of the Department of Revenue violate the Commerce Clause of the Constitution of the United States. This question was fully discussed in our original opinion and will not be discussed further. In addition, petitioner contends

that the outcome of the criminal case in the General Sessions Court should control. We hold, however, that what occurred in the General Sessions Court is immaterial. This results because the interstate transportation of intoxicating liquor is controlled by the Twenty-first Amendment, and as such, the regulations of the Department of Revenue are valid. Being valid regulations, the cargo in question is contraband and as such is subject to seizure and confiscation. Moreover, Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), has no application in the case sub judice because *Waller* only held that a conviction or acquittal in a municipal court is a bar to a subsequent prosecution for the same offense in a state court. Herein, Stroupe is not being criminally prosecuted, but rather his cargo of contraband beer is being confiscated. This being true, it is clear that *Waller* is inapplicable.

The petition to rehear is therefore denied.

DYER, C. J., and CHATTIN, McCANLESS and FONES, JJ., concur.