NORTHWEST AIRLINES INC., AND WESTERN AIRLINES, INC.,
PLAINTIFFS AND APPELLANTS, *v.* JOINT CITY-COUNTY AIR-
PORT BOARD, LEWIS & CLARK COUNTY, CITY OF HELENA,
ET AL., DEFENDANTS AND RESPONDENTS.

No. 11708.
Submitted December 10, 1969.
Decided January 5, 1970.
463 P.2d 470.

Hibbs, Sweeney & Colberg, Rex F. Hibbs, argued, Billings, Cleary, Gottlieb, Steen & Hamilton, Washington, D. C., Daniel B. Silver, appeared, Washington, D. C., for appellants.

Thomas Dowling, County Atty., C. W. Leaphart, City Atty., Leo J. Kottas, Jr., State Bd. of Equalization, Thomas Mahan, argued, Philip Strope, appeared, Helena, for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

Plaintiffs, hereinafter referred to as appellants, brought this action in the district court of the First Judicial District, in and for the County of Lewis and Clark, seeking a permanent injunction against the imposition of the tax authorized by Chapter 281, Laws of 1969, and a declaratory judgment that Chapter 281 is unconstitutional under the constitutions of the United States and the State of Montana. The court granted an order restraining imposition of the tax pending disposition of the action in the district court and the Montana Supreme Court.

This appeal follows from the judgment denying permanent injunctive relief and holding Chapter 281 and the tax imposed pursuant thereto by the defendants, hereinafter referred to as respondents, to be constitutional.

Chapter 281, of the Montana Session laws, 1969, now sections 1-829 through 1-832, R.C.M.1947, provides in part:

"Every city or county which constructs, operates or maintains, individually or jointly, a public airport with funds contributed in whole or in part, directly or indirectly, by the state, county, city, or other public authority, is authorized and empowered to require every passenger air carrier for hire which uses the airport for commercial use of aircraft, to pay a service charge of one dollar ($1) for each passenger enplaning upon its aircraft at any such public airport as a point of origin for transportation purposes."

Chapter 281 defines a "Passenger air carrier" as:

"[A] common carrier of passengers for hire by aircraft weighing over twelve thousand five hundred (12,500) pounds on a regular schedule or schedules, and a carrier of passengers for hire by aircraft weighing over twelve thousand five hundred (12,500) pounds on a contract or charter basis."

The act became effective July 1, 1969. Prior to that time the City Council of Helena, and the County Commissioners of Lewis and Clark County, joint owners and operators of the Helena airport, adopted resolutions directing the State Board of Equalization to commence collection of the fee authorized under the act.

The appellants are the only two scheduled commercial air carriers serving the Helena airport with aircraft weighing more than 12,500 pounds. Commercial service on a supplemental and/or charter basis is provided in addition by other carriers. In 1968 commercial aircraft of the appellants conducted approximately 5,000 arrivals and departures at the Helena airport, and there were approximately 46,000 operations by other aircraft, including those of other commercial carriers, private

aircraft, and military aircraft. There were approximately 43,000 passenger emplanements and deplanements at the Helena airport in 1968, of which some 34,000 involved flights of the appellants. Approximately 75% of the emplaning passengers of the appellant airlines are interstate travelers.

In addition to use by the appellants, the Helena airport is used by commercial carriers using aircraft weighing 12,500 pounds or less; general aviation users and aircraft; military users and aircraft; personnel, aviators and aircraft of state and federal government agencies; airport concessionaires and their customers; and visitors. The airport facilities are also used by persons after arrival at the airport by other commercial and nonscheduled aircraft; persons using the airport facilities to transport and receive air freight shipments; and persons using the facilities when meeting or seeing off air passengers.

The sole issue to be determined is whether Chapter 281, authorizing cities and/or counties which operate public airports through the use of public funds to impose upon every air passenger carrier weighing over 12,500 pounds a charge of $1.00 for each originating passenger emplaning upon its aircraft, is constitutional. This Court will first consider whether Chapter 281 infringes upon the constitutional protection of interstate travel and, second, whether the exaction can be justified as a valid use charge for constitutional purposes.

The right of interstate travel and the lack of power in the states to infringe upon or interfere with that right have been consistently upheld by the United States Supreme Court for over a century. The leading case is Crandall v. Nevada, 73 (6 Wall.) U.S. 35, 18 L.Ed. 745 (1868), in which the court struck down a Nevada head tax. There the state of Nevada sought to levy a tax of one dollar upon every person leaving the state by railroad, stagecoach or other vehicle engaged in transporting passengers for hire. The tax was to be collected by the carrier and reported monthly to the state. Crandall, agent of a stage company, was convicted for refusing to report the number of

passengers carried and for nonpayment of the tax. In reversing the conviction, the court stated that the issue before it was ''the right of a State to levy a tax upon persons residing in the State who may wish to get out of it; and upon persons not residing in it who may have occasion to pass through it.'' Crandall v. Nevada, supra.

The same question is before this Court. Here the City of Helena and the County of Lewis and Clark, acting pursuant to Chapter 281, seek to tax citizens of Montana who may wish to leave the state by air from the Helena airport and residents of Montana who pass through Montana on journeys encompassing a segment of travel by air carrier originating in Helena.

In holding the Nevada statute to be unconstitutional, the majority of the court in Crandall decided the case without reference to the Commerce Clause, Art. 1, § 8, Clause 3, of the United States Constitution; two justices concurred basing their opinion on the Commerce Clause. The majority rested its holding upon the requirements of the federal system itself, which demand that the government be able to call to its service, citizens from any part of the United States, without interference by any state through whose territory it might be necessary to pass. The flaw of the Nevada statute was not the amount of the tax, but the very assertion of the right to levy an exaction of that character.

'' [I]f the State can tax a railroad passenger one dollar, it can tax him $1,000. If one State can do this, so can every other State. And thus one or more States covering the only practicable routes of travel from the east to the west, or from the north to the south, may totally prevent or seriously burden all transportation of passengers from one part of the country to the other.'' Crandall v. Nevada, supra.

The same apprehended evils are present in Chapter 281. The exaction falls on the act of emplanement, which is equivalent to the act of departure and therefore is an integral aspect of interstate travel. If the state is empowered to tax the act of departure no inherent limits exist as to the amount of charge. The

right of the airport to tax the act of emplanement cannot logically be distinguished from the right of the airport to tax the act of deplanement. By the same token, arrival and departure taxes could be levied by airports at each point of intermediate stopover or transfer on a passenger's route. Since no rational basis exists for apportioning the right to tax arrival and departure among the various airports through which a traveler might pass, there is nothing to prevent the accumulation of crippling burdens on interstate air travel. Clearly the power to tax the act of departure, even where the exaction is small, encompasses the power to prohibit departure completely and to impose crippling cumulative burdens on interstate travel.

The ban on state action in this area must be absolute as demonstrated by an important line of cases, including The Passenger cases [Smith v. Turner, Norris v. City of Boston] 48 (7 How.) U.S. 283, 12 L.Ed. 702 (1848), on which the court relied heavily in Crandall v. Nevada, supra, and their progeny. Although this line of cases involved the foreign commerce of the United States and rested in part on the exclusive federal power to control ingress of persons into the United States, they illustrate the court's treatment of a right considered fundamental — free movement of persons. Unlike the movement of goods, where a balance often is struck (in the absence of federal legislation) between the Commerce Clause's demand for untrammeled commercial intercourse, and the states' needs for reasonable police regulation and revenue collection, the constitutional protection is treated as absolute.

The ban on state interference arises as a matter of constitutional law wherever the assertion of state power contains the inherent possibility of complete interdiction of some activity of federal concern. Thus, the states have been completely deprived of power to tax or otherwise regulate the act of entry to the United States, even in aid of valid police or revenue collection concerns of the states. The Passenger Cases, supra, and succeeding cases. The same is true of state action

purporting to tax or regulate the departure from, Crandall v. Nevada, supra, or entrance into, Edwards v. California, 314 U.S. 160, 62 S. Ct. 164, 86 L.Ed. 119 (1941), a state. In Edwards the court invalidated a California statute making it a misdemeanor to bring or assist in bringing into the state "any indigent person who is a nonresident knowing him to be an indigent person". Although the court accepted the state's assertion that huge influxes of migrants into California had created problems of health, morals and finance, it held that the state was powerless to impose such a limitation upon the right of travel.

While the cases reveal considerable uncertainty as to the constitutional origin of the right to travel, there is ample authority for the proposition that more than the Commerce Clause is involved. The court's language in Crandall v. Nevada, supra, reveals that the citizen's right to travel freely among the states is one of the privileges and immunities of United States citizenship protected against state abridgement by the 14th Amendment. In United States v. Guest, 383 U.S. 745, 757, 86 S. Ct. 1170, 1178, 16 L.Ed.2d 239 (1966), the court stated the following:

"The constitutional right to travel from one State to another, and necessarily to use the highways and other instrumentalities of interstate commerce in doing so, occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized. * * *

"Although the Articles of Confederation provided that 'the people of each State shall have free ingress and regress to and from any other State,' that right finds no explicit mention in the Constitution. The reason, it has been suggested, is that a right so elementary was conceived from the beginning to be a necessary concomitant of the stronger Union the Constitution created. In any event, freedom to travel throughout the United States has long been recognized as a basic right under the Constitution."

In holding Chapter 281, and the tax imposed pursuant

thereto, to be constitutional, the trial court rested its decision on the single proposition that the tax was a user tax on passengers. A basic principle governing the power of the state to levy an exaction on interstate commerce, recently reaffirmed by the Supreme Court in National Bellas Hess, Inc. v. Department of Revenue, 386 U.S. 753, 756, 87 S.Ct. 1389, 1391, 18 L.Ed.2d 505 (1967), is that "State taxation falling on interstate commerce * * * can only be justified as designed to make such commerce bear a fair share of the cost of the local government whose protection it enjoys." It follows from this that fees collected as compensation for the use of state facilities must be levied according to a "uniform, fair, and practical standard". Hendrick v. Maryland, 235 U.S. 610, 624, 35 S.Ct. 140, 59 L.Ed. 385 (1915). The formula or classification adopted by the state must bear a reasonable relation to the use of state facilities, McCarroll v. Dixie Greyhound Lines, Inc., 309 U.S. 176, 60 S.Ct. 504, 84 L.Ed. 683 (1940), in order to insure that interstate commerce bear only the burden of fair compensation or intrastate activities incidental to it.

█ Measuring against these constitutional standards, Chapter 281 cannot be justified as a use tax. The charge is levied arbitrarily without any reference to actual use of airport facilities by the passenger or the commercial air carrier, since the act of emplanement bears no reasonable relationship to a passenger's use of terminal facilities. The stipulated facts indicate that the majority of users of the airport (arriving passengers, private aviators, visitors, etc.) are exempted from the payment of any charge, yet a substantial number of persons so exempted make equal or greater use of airport facilities. Similarly, a passenger who has originated his journey elsewhere by commercial air carrier, and who makes a stopover at the Helena airport using airport facilities, is exempt from payment of the fee, while a traveler following an identical route and making no greater use of the facilities must pay if he arrives in Helena by means other than by commercial air carrier.

Although the trial court held that the charge is no different from highway user taxes, such as gasoline taxes, Chapter 281 differs significantly from such fees which are measured on a basis bearing a relationship to the amount of the carrier's use of the highways, and which are designed to insure payment by all users. An Arkansas tax imposed on the amount of gasoline in excess of twenty gallons carried by a motor vehicle entering the state was held invalid in McCarroll v. Dixie Greyhound Lines, Inc., supra, on the grounds that such a factor could have no reasonable relation to a fair charge for the use of the highways, and evidenced no purpose to exact fair compensation only from all who make use of the highways, since large use without compensation was possible by the terms of the statute. It is the fact that a charge is apportioned to, and levied on account of, actual use, rather than a mere recitation that the revenues collected are intended to compensate the state for the use of its facilities, that brings it within the category of valid use charges.

Furthermore, the latitude permitted the states in devising means of insuring that interstate commerce pay its own way with respect to the use of state facilities and services is not as great where the question involved is the interstate movement of persons rather than of goods. The power of the states to impose fees for the privilege of using the highways has been attributed, in great part, to the unusual destruction of the highways occasioned by heavy motor vehicles and the fact that "Common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use." Clark v. Poor, 274 U.S. 554, 557, 47 S.Ct. 702, 703, 71 L.Ed. 1199 (1927). In the instant case, however, Chapter 281 clearly does not impose a user charge on the carrier rather than the passenger, and even if it could be considered in that manner, the imposition of a charge based on the number of emplaning passengers bears no reasonable relationship to use of the airport facilities by the carrier.

Finally, an examination of the actual operating incidence of

Chapter 281 reveals that it creates an unreasonable and undue discrimination within the terms of the Equal Protection Clause of the 14th Amendment, and in violation of the protections guaranteed by section 3 and 27 of Art. III of the Montana Constitution. It thus violates the basic principle that:

[T]he classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." State ex rel. v. Schultz-Lindsay v. State Bd. of Equal., 145 Mont. 380, 403 P.2d 635, 641 (1965).

The fee is levied only against passengers emplaning commercial aircraft departing from the Helena airport. This class consists predominantly of individuals who are traveling from Helena to destinations without the state or whose intrastate travel forms parts of a constitutionally protected interstate journey. These individuals are a small subclass of the total class of users of the airport's facilities and services.

The explicit purpose of Chapter 281 is "to defray the cost of furnishing, operating, improving and maintaining the public airport and related facilities." To be reasonable in the light of that purpose, any classification must be based on differences in the use made of the airport facilities. Here the exempted class is indistinguishable from the class subject to the levy.

There is no issue before the Court as to the need for revenue to maintain and operate the Helena airport nor as to the propriety of raising revenues by assessing proper charges on the commercial air carriers using the airport. There is a need for revenue to support the airport, but many of the facilities, such as expensive runways, could be provided on a lesser scale were it not for the use of the port by commercial jets. However, even if legislation such as Chapter 281 seeks to achieve good and necessary ends, it must do so in a fashion not impinging on constitutional rights.

The judgment of the district court is reversed and a perma-

nent injunction against the imposition of the tax authorized by Chapter 281, Montana Session Laws of 1969, is granted on the grounds that Chapter 281 is unconstitutional under the constitutions of the United States and the State of Montana.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES JOHN C. HARRISON and HASWELL, and The HONORABLE LeROY L. McKINNON, District Judge sitting for MR. JUSTICE JOHN W. BONNER, concur.