110 N.J. Super. 54 (1970)
264 A.2d 268
ALLEGHENY AIRLINES, INC., AMERICAN AIRLINES, INC., BRANIFF INTERNATIONAL, DELTA AIR LINES, INC., EASTERN AIRLINES, INC., THE FLYING TIGER LINE, INC., MOHAWK AIRLINES, INC., NATIONAL AIRLINES, INC., NEW YORK AIRWAYS, INC., NORTHEAST AIRLINES, INC., NORTHWEST AIRLINES, INC., PAN AMERICAN WORLD AIRWAYS, INC., PIEDMONT AIRLINES, TRANS CARIBBEAN AIRWAYS, INC., TRANS WORLD AIRLINES, INC., UNITED AIR LINES, INC., PLAINTIFFS,
v.
ARTHUR J. SILLS, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, AND SIDNEY GLASER, ACTING DIRECTOR OF THE DIVISION OF TAXATION OF THE STATE OF NEW JERSEY, DEFENDANTS. CITY OF NEWARK AND CITY OF ELIZABETH, INTERVENOR-DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided April 21, 1970.
*55 Mr. Walter F. Waldau for plaintiffs (Mr. Rexford L. Lyon on the brief; Messrs. Stryker, Tams & Dill, attorneys  Mr. Roger D. Chittum, District of Columbia Bar, of counsel [Messrs. Cleary, Gottlieb, Steen & Hamilton]).
Mr. Elias Abelson and Mr. Alan B. Rothstein, Assistant Attorneys General, for defendants.
Mr. Anthony J. Iuliani for intervenor City of Newark (Mr. Sam Weiss on the brief).
Mr. Frank P. Trocino for intervenor City of Elizabeth.
HERBERT, J.S.C.
Plaintiffs assert that Chapter 200 of the Laws of 1969 is unconstitutional. It provides for a "service charge" to be paid for each passenger who departs from a publicly-supported airport located within a municipality or municipalities having a population of 100,000 or more. Newark Airport, consisting of approximately 2,300 acres located partly in the City of Newark and partly in the City of Elizabeth, is the only airport in New Jersey to which *56 the statute now applies. The specified "service" charge is $1 for each passenger bound by plane for a destination within the continental United States, $2 for each passenger leaving for a point outside of the United States, and 50 cents for a passenger leaving by helicopter. These charges are imposed upon the air lines, but paragraph 3 of chapter 200 reads as follows:
Nothing herein shall prevent a passenger air carrier from collecting, directly or indirectly, the service fee payable with respect to each paying passenger from such passenger.
Chapter 200 also provides for monthly returns and payments to the State's Director of the Division of Taxation, followed by distribution of the moneys collected to the municipality or municipalities in which the airport lies. Under the statutory formula 80% of revenues produced by the "service fees" at Newark Airport will be distributed to the City of Newark and 20% to the City of Elizabeth.
Plaintiffs all operate passenger planes in and out of Newark Airport under certificates of authority granted by the Civil Aeronautics Board pursuant to 49 U.S.C.A. § 1371. All of their passenger flights out of Newark go directly to destinations beyond the limits of New Jersey and are thus in interstate or foreign commerce.
The Port of New York Authority, a public body created under an interstate compact between New York and New Jersey, operates Newark Airport. Newark and Elizabeth do not participate in the management nor do they contribute in any direct way to the cost of operations. The portion of the airport located in Newark is largely, if not entirely, owned in fee by the city and leased to the Port of New York Authority under a lease which will end with the year 2016. Under the terms of the lease  which covers the seaport on Newark Bay as well as the Newark portion of the airport  the Port Authority pays a substantial rental. The part of the airport in Elizabeth is owned outright by the Authority.
*57 In 1969 approximately 7,130,000 passengers used Newark Airport. About half of these were persons who left by airplanes and helicopters. For 1968 the total of passengers was 6,716,584, and for future years substantial increases above the 1969 figure are predicted.
If the charges prescribed by chapter 200 are valid, there will be from that source several million dollars a year available for distribution to the cities.
When first passed and presented to the Governor the act in question was vetoed, unconstitutionality being stated as grounds for the veto. The act then passed a second time on December 1, 1969 and became chapter 200 of the Laws of 1969 without the Governor's signature.
In support of constitutionality it is argued for the cities that the statute provides for service charges and that municipal services are in fact supplied which benefit the airport, plaintiffs and, at least indirectly, departing travellers who use the airport; also that the charges are reasonable and proper for the benefits received. However, the only services pointed to are conventional ones, such as police and fire protection, a municipal court system to handle complaints arising at the airport, garbage disposal facilities and the like; and even the burden of the two cities in supplying these services is made relatively light by the fact that the Port Authority has its police department and fire fighting force, and rubbish is collected to a considerable extent by individual contractors.
Counsel for the cities also have argued that chapter 200 imposes a valid tax on the business of plaintiffs and that the gauge of the tax  the number of passengers carried out of New Jersey by each airline  is reasonable and proper. They have cited many cases dealing with the power of a State to tax interstate businesses, or property used in interstate commerce. As an example of the authorities from which it is contended that chapter 200 is entitled to approval as an exercise of state taxing power National Bellas Hess *58 v. Illinois, 386 U.S. 753, 87 S.Ct. 1389, 18 L.Ed.2d 505 (1967), may be mentioned.
I have concluded that the arguments for constitutionality made for the two cities must be rejected. I think the statute is plainly unconstitutional. The amounts which it requires plaintiffs to pay for each of their departing passengers cannot be justified as service charges for the use of municipal facilities or the furnishing of municipal services. Nor can those amounts be justified as a tax on interstate commerce. In a very recent case the Supreme Court of Montana considered and held unconstitutional a statute very much like chapter 200 of the Laws of 1969. Northwest Airlines, Inc. v. Joint City-County Airport Bd., 463 P.2d 470 (Mont. January 5, 1970). I adopt the reasoning of that case and conclude that the same result is called for here. The Helena Airport which was there involved was municipally operated and financed, so that a stronger argument could be made in support of a reasonable charge by the city for the use of facilities paid for, maintained and manned by it than was made in the present case. Nevertheless, the statute was held unconstitutional, the court citing, among other authorities, Crandall v. Nevada, 73 U.S. (6 Wall.) 35, 18 L.Ed. 745, 746 (1868), and Passenger Cases, 48 U.S. (7 How.) 283, 12 L.Ed. 702 (1848).
In essence, chapter 200 of the Laws of 1969  like the Montana statute which was before the court in Northwest Airlines, Inc.  is nothing but a modern version of the act passed in Nevada more than 100 years ago which purported to levy a tax of $1 upon every person leaving the state by railroad, stage coach or other vehicle engaged in the business of transporting passengers for hire, and which was struck down in Crandall v. Nevada, supra, on the ground that it was an unlawful attempt to interfere with the constitutional right of citizens to travel freely.
A judgment will be entered declaring chapter 200 of the Laws of 1969 unconstitutional and enjoining its enforcement.