EVANSVILLE-VANDERBURGH AIRPORT AUTHORITY DIST. ET AL.
*v.* DELTA AIRLINES, INC., ET AL.

[No. 869S179. Filed December 23, 1970. No petition for rehearing filed.]

*Howard P. Trockman, James F. Flynn,* of Evanville, for appellants.

*Fred P. Bamberger, Jeffrey R. Kinney, Bamberger, Foreman, Oswald & Hahn* of counsel, all of Evansville, *John K. Mallory, Jr., Roger D. Chittum, Cleary, Gottlieb, Steen & Hamilton,* of counsel, all of Washington D.C. for appellees.

DEBRULER, J.—This is an appeal from a final judgment in the Vanderburgh County Superior Court granting appellees a permanent injunction against the enforcement of Evansville-Vanderburgh Airport Authority District's Ordinance No. 33, which ordinance establishes a charge of $1.00 for each passenger (with certain exceptions) enplaning a commercial aircraft at Dress Memorial Airport, Evansville, Indiana. The other appellants are either directors or officers of the appellant Airport Authority District.

On February 26, 1968, appellants enacted Ordinance No. 33, intended to become effective July 1, 1968, which levied a charge of $1.00 on enplaning commercial air passengers at

Dress Memorial Airport. The ordinance, in pertinent part, reads:

> *"Section 1.* Commencing on July 1, 1968, there is hereby fixed, created and established a use and service charge of One Dollar ($1.00) for each passenger enplaning any commercial Aircraft operated from the Dress Memorial Airport.
>
> * * *
>
> *"Section 4.* The term 'each passenger enplaning any commercial aircraft operated from the Dress Memorial Airport' shall not include, nor shall the use and service charge hereby created, apply to any active members of the United States Armed Forces enplaning aircraft at the Dress Memorial Airport, or any person purchasing an airline ticket having, as an initial point of departure, a locality other than Dress Memorial Airport, and whose flight either terminates or requires an intermediate or temporary stop at Dress Memorial Airport.
>
> *"Section 5.* All revenue collected from said use and service charges shall be held by the Evansville-Vanderburgh Airport Authority District in a separate fund for the purpose of defraying the present and future costs incurred by said Airport Authority in the construction, improvement, equipment, and maintenance of said Airport and its facilities for the continued use and future enjoyment by all users thereof."

The appellee airlines are commercial air carriers transporting passengers, freight, express and mail to and from Dress Memorial Airport in interstate commerce under authorization of the Civil Aeronautics Board. Each of the appellee airlines leases and operates facilities at Dress Memorial Airport for the purposes of providing commercial air passenger and freight service. The appellees sought to enjoin the enforcement of Ordinance No. 33 on the grounds it was unconstitutional and illegal in several respects. In granting appellees a permanent injunction the trial court made eleven conclusions of law, but in the view we take of this case it is necessary to discuss only the following one:

> "The $1.00 charge imposed by ordinance No. 33 upon passengers enplaning upon commercial aircraft at Dress

Memorial Airport, not being related to or apportioned according to the use of facilities at Dress Memorial Airport, constitutes an unreasonable burden upon interstate commerce in the United States."

Appellants' argument on appeal is that that conclusion is erroneous and the $1.00 tax is a valid service tax for the use of facilities provided by appellants at Dress Memorial Airport and thus not an unreasonable burden on interstate commerce.

There is no question that the incidence of the tax imposed by Ordinance No. 33 falls on interstate commerce. The tax is on the act of enplanement on one of the appellee airlines and in 1966, 88.4% of the persons departing Dress Memorial Airport upon the appellee airlines enplaned for ultimate destinations beyond the State of Indiana.

The basic principle governing the power of a state to levy a tax affecting interstate commerce is that such a tax "can only be justified as designed to make such commerce bear a fair share of the cost of the local government whose protection it enjoys." *National Bellas Hess, Inc.* v. *Dept. of Revenue* (1967), 386 U. S. 753, 87 S. Ct. 1389, 18 L. Ed. 2d 505; *Freeman* v. *Hewit* (1946), 329 U. S. 249, 67 S. Ct. 274, 91 L. Ed. 265. The mere fact that the taxing authority denominates a tax as a "use" or "service" does not settle the question, however. The classification used by the taxing authority for the assessment of such fees must embody a uniform, fair, practical standard bearing a reasonable relationship to the use of state facilities. *Northwest Airlines, Inc.* v. *Joint City-County Airport Bd.* (1970, Mont. S. Ct.), 463 P. 2d 470; *Hendrick* v. *Maryland* (1915), 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385.

The sole issue then on this appeal is whether the act of enplaning a commercial aircraft is reasonably related to the use of the facilities at Dress Memorial Airport for which the $1.00 tax is levied.

The facts are undisputed and show the following:

In 1967, there were 146,955 enplaning passengers and 145,142 deplaning passengers on air carrier flights at Dress Memorial Airport. In 1967, there were 14,834 take-offs and landings by commercial air carriers and there were 84,598 take-offs and landings by other civil and military aircraft.

The airport facilities at Dress Memorial Airport include the following facilities and services:

"(1) Main Terminal Building
air passenger service counters
air freight service counters and facilities
waiting room
rest rooms
dining room
bar
lunch counter
newsstand
barber shop
display areas
taxi stands
car rental counters
baggage facilities
telephone booths

"(2) Other Facilities
private hangar facilities
nonscheduled airline hangar facilities,
    office space, and waiting areas
entrance and exit facilities and sidewalks
parking lots
fuel storage areas
office space
runways and taxi-ways
approach lighting system
instrument lighting system"

By the express terms of the Ordinance the revenue from the tax is for the support of all of these facilities, the relevant part stating:

"*Section 5.* All revenue collected from said use and service charges shall be held by the Evansville-Vanderburgh Airport Authority District in a separate fund for the purpose of defraying the present and future costs incurred by said Airport Authority in the *construction, improvement, equip-*

*ment, and maintenance of said Airport and its facilities for the continued use and future enjoyment by all users thereof."* (Emphasis added.)

However, enplaning commercial air passengers are *not* the only persons using these facilities. It was stipulated by the parties that the above facilities and services are also used by the following classes of persons who are *not* subject to the $1.00 tax imposed by Ordinance No. 33:

   (a) Enplaning commercial passengers who are active members of the armed forces;
   (b) Enplaning commercial passengers stopping over or changing planes at Dress Memorial Airport after arrival by commercial aircraft;
   (c) Deplaning commercial passengers;
   (d) Persons arriving or departing on noncommercial or nonscheduled aircraft;
   (e) Persons sending or receiving air freight shipments;
   (f) Persons meeting or seeing off commercial and noncommercial passengers;
   (g) Persons visiting the airport for the purpose of observing flight operations or for the purpose of using dining, bar, car rental, or other facilities.

These classes of uses of airport facilities actually constitute a majority of those persons who use one or more of the airport facilities.

It is obvious that certain enplaning commercial passengers are subject to the tax regardless of the extent to which they use the airport facilities. On the other hand persons who may make very extensive use of the facilities are not subject to the tax unless they actually board one of appellees' commercial flights. For example, a commercial passenger carrying only a briefcase may be driven to the airport by his wife, immediately buy a ticket and board the airplane. He is subject to the so-called "use" tax. Another person may drive to the airport and park his car at the facility provided, get a haircut, eat dinner, use the washroom, and then get in his own private jet and take off. He does not pay the $1.00 tax. Also

a deplaning commercial passenger, who makes the same minimum use of the facilities as an enplaning commercial passenger, does not have to pay the tax.

The substantially identical issue was recently decided in *Northwest Airlines, Inc.* v. *Joint City-County Airport Bd.*, *supra.* That case involved a Montana statute which authorized airport boards to impose on each commercial air carrier operating aircraft over 12,500 lbs. a so-called "service" charge of $1.00 for each originating passenger enplaning upon its aircraft at that airport.

The Montana Supreme Court held that the statute was unconstitutional in several respects including the fact that the tax could not be justified as a use and service fee because its imposition was not reasonably related to actual use of the airport facilities. The court said:

> "In holding Chapter 281, and the tax imposed pursuant thereto, to be constitutional, the trial court rested its decision on the single proposition that the tax was user tax on passengers. A basic principle governing the power of the state to levy an exaction on interstate commerce, recently reaffirmed by the Supreme Court in *National Bellas Hess, Inc.* v. *Department of Revenue*, 386 U. S. 753, 756, 87 S. Ct. 1389, 1391, 18 L. Ed. 2d 505 (1967), is that 'State taxation falling on interstate commerce * * * can only be justified as designed to make such commerce bear a fair share of the cost of the local government whose protection it enjoys.' It follows from this that fees collected as compensation for the use of state facilities must be levied according to a 'uniform, fair, and practical standard'. *Hendrick* v. *Maryland*, 235 U. S. 610, 624, 35 S. Ct. 140, 59 L. Ed. 385 (1915). The formula or classification adopted by the state must bear a reasonable relation to the use of state facilities, *McCarroll* v. *Dixie Greyhound Lines, Inc.*, 309 U. S. 176, 60 S. Ct. 504, 84 L. Ed. 683 (1940), in order to insure that interstate commerce bear only the burden of fair compensation or intrastate activities incidental to it.

> "Measuring against these constitutional standards, Chapter 281 cannot be justified as a use tax. The charge is levied arbitrarily without any reference to actual use of airport facilities by the passenger's use of terminal facilities. The stipulated facts indicate that the majority of users

of the airport (arriving passengers, private aviators, visitors, etc.) are exempted from the payment of any charge, yet a substantial number of persons so exempted make equal or greater use of airport facilities. Similarly, a passenger who has originated his journey elsewhere by commercial air carrier, and who makes a stopover at the Helena airport using airport facilities, is exempt from payment of the fee, while a traveler following an identical route and making no greater use of the facilities must pay if he arrives in Helena by means other than by commercial air carrier." 463 P. 2d at 474.

The fact that the Montana tax was in form imposed on the carrier instead of the passengers as in the case at bar, is of no legal significance. *Henderson* v. *Mayor of New York* (1876), 92 U. S. 259, 23 L. Ed. 543.

It is clear and we so hold that the tax imposed by Ordinance No. 33 is not reasonably related to the use of the facilities which benefit from the tax, and is, therefore, an unreasonable burden on interstate commerce in violation of Art. 1, § 8, cl. 3 of the United States Constitution.

Judgment affirmed.

Hunter, C.J., Arterburn, Givan and Jackson, JJ., concur.

NOTE.—Reported in 265 N. E. 2d 27.