Merrimack,
No. 6086.

NORTHEAST AIRLINES, INC. & a.

*v.*

NEW HAMPSHIRE AERONAUTICS COMMISSION & a.

January 29, 1971.

*Devine, Millimet, McDonough, Stahl & Branch* ( *Mr. Joseph A. Millimet* orally ), for the plaintiffs.

*Warren B. Rudman,* Attorney General and *W. Michael Dunn,* Assistant Attorney General ( *Mr. Dunn* orally ), for the defendants.

DUNCAN, J. By petition for declaratory judgment, the plaintiff airlines question the constitutionality of RSA 422:43 ( supp. ), imposing upon them, as common carriers of passengers for hire by aircraft on regular schedules, a service fee of one dollar for each passenger emplaning upon their aircraft at publicly operated landing areas in this State. For the three-year period presently involved, the fees charged to the plaintiff Northeast Airlines, Inc. have averaged somewhat over $41,000 a year, and to the plaintiff Mohawk Airlines, Inc. a little over $2600.

The facts were stipulated by the parties, and the Superior Court ( *Loughlin,* J. ) reserved and transferred without ruling all questions of law presented.

When first before this court as a proposal in the form of House Bill 435 at the 1959 session of the legislature, the service fee was considered, by reason of statutory definition ( RSA 422:3( II ) ) to be applicable only to carriers engaged solely in intrastate commerce, and was considered not to violate the Constitution of this State, so long as it was reasonable recompense for facilities furnished. *Opinion of the Justices,* 102 N.H. 73, 150 A.2d 522 ( 1959 ). It was intimated that objection because of its effect upon interstate commerce was not likely in view of *Aero Transit Co.* v. *Comm'rs,* 332 U.S. 495, 92 L. Ed. 99, 68 S. Ct. 167 ( 1947 ) and *Tirrell* v. *Johnston,* 86 N.H. 530, 171 A. 641 ( 1934 ). *Id.* at 75, 150 A.2d at 524.

As enacted in 1959, the statute was made applicable to common carriers of passengers "whether in interstate or intrastate operations " ( RSA 422:43 ); and the phrase "passenger carrier by aircraft " was substituted for the phrase "air carrier " used by the bill. Thus House Bill 435 as enacted was made applicable to interstate as well as intrastate commerce.

The plaintiffs suggest that because of these and later changes, it cannot be said that section 43 ( supp. ) has "ever been reviewed by this court. " While this may be so, the fact remains that the essential characteristics of the charge or fee were considered in *Opinion of the Justices supra,* and it was upheld. *See also Opinion of the Justices,* 94 N.H. 513, 52 A.2d 859 ( 1947 ). We continue to regard the charge as being what it purports to be: a "service fee on [ common ] carriers " of passengers for hire on a regular schedule; while *s.* 44 of the act imposes a like charge upon carriers under contract or by charter. RSA 422: 44.

We also regard the charge as one levied upon the carrier and not the passenger, although we recognize that the statute expressly provides that it shall not prevent the carrier from collecting the fee over, from its passengers. In this connection we note also that by reason of a 1969 amendment the amount of the fee now depends not only upon the number of passengers carried, but also upon the gross weight of the air craft. RSA 422:43 ( supp. ). Thus for planes having a gross weight of less

than 12,500 pounds, which are crafts described by federal statute as "small aircraft" ( 26 U.S.C.A. s. 4263 ( d ) ), the fee is one-half of that assessed per passenger against the plaintiffs, which operate heavier aircraft. Since we accept the view that the charge is levied upon the carrier, we do not reach the argument advanced by the plaintiffs that the statute invades the constitutional rights of passengers to travel interstate. *See Shapiro* v. *Thompson*, 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 ( 1969 ).

Our conclusion that the fee is levied upon the carrier is fortified not only by the express language of the statute, but also by the provision originating with House Bill 435 *supra*, that the proceeds of the tax shall be covered into the aeronautical fund established by section 42, for the purpose of establishing and maintaining air navigation facilities, and liquidating obligations incurred under the aeronautics act. RSA 422:42.

The cases from other jurisdictions upon which the plaintiffs rely in support of their arguments do not persuade us that our statute must be held invalid. In *Allegheny Airlines, Inc.* v. *Sills*, 110 N.J. Super. 54, 264 A.2d 268 ( 1970 ), a statute under attack would have imposed a service charge for the benefit of municipalities which did not contribute to the management or cost of operation of the airport in question. Hence the court concluded that the charge could not be justified as a service charge, and was invalid as a tax upon interstate commerce. In holding the charge invalid, the court relied upon *Northwest Airlines, Inc.* v. *Joint City-County Air. Bd.*, 154 Mont. 352, 463 P.2d 470 ( 1970 ). That case involved a statute more closely resembling our own. It was considered by the Montana court to be in essence a tax upon the passengers, and in holding it invalid the court placed substantial reliance upon *Passenger Cases*, 48 U.S. ( 7 How. ) 283, 12 L. Ed. 702 ( 1849 ), and upon *Crandall* v. *Nevada*, 73 U.S. ( 6 Wall. ) 35, 18 L. Ed. 745 ( 1867 ) which invalidated a tax expressly imposed upon passengers. Those decisions in turn relied upon *McCulloch* v. *Maryland*, 17 U.S. ( 4 Wheat. ) 316, 4 L. Ed. 579 ( 1819 ) and its "unsound declaration . . . that the power to tax is a power to destroy" ( *Tirrell* v. *Johnston*, 86 N.H. 530, 547, 171 A. 641, 651 ( 1934 ) ), a declaration to which Mr. Justice *Holmes* later rejoined, in *Panhandle Oil Co.* v. *Knox*, 277 U.S.

218, 223, 72 L. Ed. 857, 859, 48 S. Ct. 451, 453 (1928): "not . . . while this Court sits."

Even in cases involving taxes upon interstate commerce, which this case is not, the law has so far advanced since *McCulloch* v. *Maryland supra*, that a recent comment could say that "Both judicial and legislative developments stemming from the Supreme Court's decision in *Northwestern* (*Northwestern States Portland Cement Co.* v. *Minnesota*, 358 U.S. 450, 3 L. Ed. 2d 421, 79 S. Ct. 357 (1959)) suggest that the critical issue in state taxation of interstate commerce is how interstate commerce may be taxed rather than whether it may be taxed at all" (citing *General Motors Corp.* v. *District*, 380 U.S. 553, 14 L. Ed. 2d 68, 85 S. Ct. 1156 (1965) and *Norfolk & W. Ry.* v. *Missouri State Tax Comm'n*, 390 U.S. 317, 19 L. Ed. 2d 1201, 88 S. Ct. 995 (1968)). Note, 36 U. of Chi. L. Rev. 186, 204-05 (1968).

Most recently the *Northwest Airlines* case *supra* was followed and heavily relied upon in *Evansville-Vanderburgh Airport Authority District* v. *Delta Airlines, Inc.*, 265 N.E.2d 27 (Ind. 19-70), invalidating a district ordinance which imposed a use and service charge for the purpose of defraying the costs of the district's airport, upon the ground that the "tax imposed" was not "reasonably related to the use of facilities" and was therefore a burden upon interstate commerce. Since we do not regard the authorities relied upon by this and the *Northwest Airlines* case as controlling, we do not adopt the views which they express.

Many of the plaintiffs' objections to the carrier service fee are answered by the comprehensive opinion of *Peaslee*, C.J. in *Tirrell* v. *Johnston supra*, upholding the validity of the gasoline road toll under state and Federal Constitutions. As was there observed, "The state may tax things used in interstate commerce as it taxes other like things. This is not taxing interstate commerce." *Id.* at 551, 171 A. at 653. However, we do not consider the charge to be an act of the State "in its sovereign capacity as a layer of taxes for the support of government or a regulator of conduct." *Tirrell* v. *Johnston, supra* at 540, 171 A. at 647. We regard it rather as a "charge for the use of facilities furnished." *Id.* at 541, 171 A. at 647.

The complaint that the charge is discriminatory because im-

posed upon an arbitrary class of users including the plaintiffs is not convincing. Other classes of users, whose use of the facilities is only irregular, or for purposes incidental to businesses other than the business of carriage of passengers by air for hire, may reasonably be differently classified, as may the carriers of passengers by lighter craft, having smaller carrying capacities. *See Morf* v. *Bingaman*, 298 U.S. 407, 80 L. Ed. 1245, 56 S. Ct. 756 (1936). Even a reasonable charge to federal instrumentalities making " substantial " use of public airport facilities is sanctioned by federal statute. 49 U.S.C.A. *s.* 1110(4).

We conclude that the charge in question is what it purports to be, a fee for the use of facilities furnished by the public. Its incidence depends upon an event which is wholly intrastate, namely the emplanement of passengers within this jurisdiction at a facility publicly provided and supported; the burden upon the carrier is minimal, and is not claimed to exceed reasonable compensation for the use provided. *Aero-Transit Co.* v. *Comm'rs*, 332 U.S. 495 *supra*; *Capitol Greyhound Lines* v. *Brice*, 339 U.S. 542, 94 L. Ed. 1053, 70 S. Ct. 806 (1950); *Bode* v. *Barrett*, 344 U.S. 583, 97 L. Ed. 567, 73 S. Ct. 468 (1953); Annot., 97 L. Ed. 573 (1953); Annot., 17 A.L.R.2d 421 (1951).

The fees imposed are valid and collectible, and a declaratory judgment in favor of the defendant Director should be entered accordingly.

*Judgment for the defendants.*

All concurred.